UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

R & K PRODUCE INC.,

Plaintiff,

-against-

MARNOCK LLC, d/b/a Food Saver NY, MARNOCK RETAIL LLC, d/b/a Good Food For Less, and IAN KELLY,

Defendants.

---

**REPORT AND RECOMMENDATION**
1:25-cv-5570 (FB)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff R & K Produce Inc. ("R & K") has brought this action against Defendants Marnock LLC, doing business as Food Saver NY ("Marnock"), Marnock Retail LLC, doing business as Good Food For Less ("Marnock Retail," together with Marnock, "Corporate Defendants"), and Ian Kelly (collectively with the Corporate Defendants, "Defendants") (Compl., Dkt. 1.) Plaintiff alleges that Defendants violated the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a – 499t, and also asserts common law claims for failure to pay for goods sold, and breach of contract.

Before the Court is Plaintiff's Motion for Default Judgment ("Motion," Dkt. 13.) For the reasons stated herein, I respectfully recommend that the Motion be granted.

## I. Factual Background

The following facts are taken from the uncontested allegations in the Complaint and Declaration of Tae Wook Kang ("Kang Decl.") (Dkt. 15) and its exhibits and are assumed true for the purpose of deciding the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Plaintiff and Corporate Defendants are New York corporations engaged in the business of buying and selling wholesale quantities of fresh fruits and vegetables through interstate commerce. (Compl. ¶¶ 4-6.) Plaintiff holds valid PACA License number 20200300 and is in active standing. (*Id.* ¶ 4.)

Marnock and Marnock Retail holds or held valid PACA License numbers 20210670 and 20230973, respectively. (Kang Decl. ¶ 3; Ex. K to Kang Decl. ("Corporate Defs. PACA Licenses"), Dkt. 15-2.) The business address on Marnock's PACA license is 402 East 83rd Street, Brooklyn, NY 11236 with a trade name listed as "Foodsaver NY." The business address on Marnock Retail's PACA license is 412 East 83rd Street, Brooklyn, NY 11236 with a trade name listed as "Good Food for Less." The PACA licenses for both Corporate Defendants use the same phone number and email domain name (foodsaverny.com) for their contact information. Defendant Kelly is reported as the sole principal on both Corporate Defendants' PACA licenses. While the Corporate Defendants' addresses have different numbers, the two locations share an awning and commercial entrance where deliveries are accepted, such that when Plaintiff makes deliveries to Marnock, it "ha[s] no way of knowing which entity is actually receiving and selling the goods. . . ." (Kang Decl. ¶ 4; *see also* Ex. L to Kang Decl., Dkt. 15-3.)

Between May 27, 2025, and July 7, 2025, Plaintiff sold and delivered to Defendants wholesale quantities of fresh fruits and vegetables that had been grown outside the United States or the State of New York (the "Transactions"). (*See* Kang Decl. ¶ 7.) Plaintiff issued twenty-one invoices for the Transactions ("Invoices"), each showing the name "Sampars Food Saver NY" and the address 412 E 83rd Street, Brooklyn, NY 11236. (Ex. M to Kang Decl., Dkt. 15-4.) At the bottom of each Invoice is the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these

> commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. Interest on unpaid balance shall accrue at higher of 18% per year or maximum statutory rate. Buyer agrees to pay interest on any attorneys' fees necessary to collect any balance due hereunder. All interest and attorneys' fees due seller shall be considered sums owing in connection with this transaction under the PACA trust.

Collectively, the Invoices show a total amount due of $43,660.50.

## II. Procedural Background

Plaintiff commenced this action on October 3, 2025. Defendants did not file an answer or otherwise respond to the Complaint, and a certificate of default was entered by the Clerk of Court on November 7, 2025. (Dkt. 11.) Plaintiff filed the Motion on November 21, 2025 and supplemented it with a memorandum of law ("Supp. Mem.") (Dkt. 18) and a Revised Damages Chart (Dkt. 19-1) on June 10, 2026 pursuant to the Court's request.

## III. Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2).

"[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558(DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The Court may also "assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation omitted). Serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is

located. *See* Fed. R. Civ. P. 4(k)(1)(A). Plaintiff must also establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The Court must then determine whether the plaintiff's "allegations establish [the defendants'] liability as a matter of law." *Finkel*, 577 F.3d at 84. A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Kilderis v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *report and recommendation adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84.

However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

## DISCUSSION

### I. Proper Service, Compliance with Local Rules, and Personal Jurisdiction

Plaintiff served Kelly by leaving a copy of the summons and complaint with someone of suitable age and discretion who resides at Kelly's abode in West Hempstead, New York, and it served Marnock and Marnock Retail, both New York limited liability companies, by delivering copies of the summons and complaint to the New York Secretary of State. (*See* Affs. of Service, Dkts. 6-8); *see also* Fed. R. Civ. P. 4(e), 4(h)(1)(B); N.Y. Bus. Corp. Law § 306(b)(1). Accordingly, the Court has personal jurisdiction over Defendants.

In compliance with the Local Civil Rules, Plaintiff filed a Notice of Motion (Dkt. 13), a Memorandum of Law (Dkt. 16), a declaration showing that the Clerk has entered default (Brown Decl.,

Dkt. 14), a Proposed Default Judgment Order detailing the proposed judgment to be entered (Dkt. 14-9), proof of having mailed the motion papers to defendants (Dkt. 17), and a statement of damages affirmed by someone with personal knowledge (Kang Decl.). *See* Loc. Civ. Rules 7.1, 55.2.

**II. Liability**

Plaintiff brings PACA and common law claims against Defendants. Under PACA, Plaintiff asserts failure to make prompt payment of trust funds against all Defendants (Compl. ¶¶ 19-23) and unlawful dissipation of trust assets by a corporate official against Kelly (*id.* ¶¶ 24-30). Plaintiff also asserts the common law claims of failure to pay for goods sold (*id.* ¶¶ 31-33) and breach of contract (*id.* ¶¶ 34-39) against Corporate Defendants. In addition, Plaintiff seeks a declaratory judgment that Corporate Defendants are alter egos of each other. (*Id.* ¶¶ 40-55.)

***A. PACA***

"Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce." *Am. Banana Co. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2d Cir. 2004). In 1984, Congress added § 499e(c) to help protect the sellers of perishable agricultural commodities. *Id.* at 37. Congress found that these "sellers needed greater protection" because they "were typically required to sell their produce quickly and frequently found themselves in the position of unsecured creditors of buyers whose creditworthiness could not be verified." *Id.* "If buyers defaulted, sellers could look only to the commodities (which would have perished) or to the sales proceeds of the commodities." *Id.* However, the sellers "were often unable to collect monies owed to them" because they were "typically unsecured creditors" who lacked priority against secured credits such as banks. *Id.*

Congress designed § 499e(c) to address this problem by "requir[ing] licensed dealers to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers." *Id.* In so doing, Congress made "the sellers' interests in the commodities and sales proceeds superior to those of the buyers' [other] creditors." *Id.*

Congress also created a private right of action through PACA pursuant to which a trust beneficiary can enforce payments from a trust, when the buyer has failed to pay for accepted produce. *See id.* § 499e(c)(5).

> "To recover the proceeds from a PACA created trust, a plaintiff must demonstrate: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law."

*A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (citing 7 U.S.C. § 499e).

### 1. <u>Liability under PACA</u>

#### *a. Plaintiff Sold Perishable Agricultural Commodities*

PACA defines "perishable agricultural commodity" as "[f]resh fruits and fresh vegetables of every kind and character[.]" 7 U.S.C. § 499a(b)(4)(A). Between May 2025 and July 2025, Plaintiff sold wholesale quantities of fresh fruits and vegetables to Defendants (Compl. ¶¶ 4, 9; Invoices), thus satisfying the first element.

#### *b. Corporate Defendants were Commission Merchants, Dealers, or Brokers*

Under the second element of a PACA trust claim, a plaintiff must establish that the purchaser is a commission merchant, dealer, or broker, as defined in 7 U.S.C. § 499a(b)(5) and (6). *See A & J Produce Corp.*, 385 F. Supp. 2d at 358. By holding a valid PACA license, purchasers qualify as "dealers" under PACA. *See Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 268 (E.D.N.Y. 2019). Marnock and Marnock Retail holds or held valid PACA licenses (*see* Corporate Defs. PACA Licenses), and, therefore, are "dealers" under PACA.

#### *c. The Transactions Occurred in Interstate Commerce*

Under PACA, "interstate commerce" is defined as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(b)(3). Plaintiff sold produce to Defendants that were grown outside of the United States or the State of New York (Mem. at 5), including tropical fruits such as bananas, mangos, pineapples, and papayas (Invoices); thus, Plaintiff satisfies this element.

#### *d. Plaintiff Has Not Received Full Payment*

The twenty-one Invoices dated from May 27, 2025 to July 7, 2025 show a total amount due of $47,153.34. (*See also* Compl. ¶ 9.) Defendant made a partial payment on the May 27, 2025 Invoice, but Plaintiff has not received full payment for the remaining Invoices. (*See* Revised Damages Chart; Kang Decl. ¶ 8.)

#### *e. Plaintiff Gave Written Notice of Intent to Preserve Trust Rights*

A seller has an obligation to provide notice of its intent to preserve its trust rights under PACA. *See* 7 U.S.C § 499e. When notice is provided through invoice statements, (1) the bill or invoice statements must be "ordinary and usual" under the meaning of 7 C.F.R. § 46.46(a)(5); (2) the payment period must appear on the bill or invoice if it differs from the statutory default payment period of ten days; and, (3) the sellers must print on the bill or invoice a statement of intent to preserve the trust, using the statutory language provided. *Id.*

Tae Wook Kang, President of R&K, provided a sworn statement that each of the twenty-one Invoices was made in the ordinary course of business at or near the time the Invoices were issued and under his direction and supervision. (Kang Decl. ¶ 5.) Because the Invoices do not specify a payment period, the payment period is ten days from the Invoice date. *See* 7 U.S.C. § 499e(c)(3); 7 CFR § 46.2(aa)(1). All the Invoices included the precise required statutory language. Accordingly, Plaintiff

satisfies the three independent requirements of this element. *See Double Green Produce, Inc.*, 387 F. Supp. 3d at 270 (finding that a substantially similar statement satisfied PACA).

I find that Plaintiff has satisfied all five elements of a PACA claim.

### 2. **Alter Ego Theory of Liability**

Plaintiff argues that Marnock and Marnock Retail are alter egos and thus jointly and severally liable for the money owed. (Mem. at 9-10.)

Alter ego liability is not a separate cause of action, but an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on the corporation's owner or another entity. *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 195 (E.D.N.Y. 2009) (quotations and citation omitted).

To establish alter ego liability, a plaintiff must show that "(1) the [other entity] exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Sik Gaek, Inc. v. Yogi's II, Inc.*, No. 10-CV-4077 (ARR)(VVP), 2014 WL 12828174, at *10 (E.D.N.Y. July 25, 2014). In determining whether there is "complete control," courts will look at "factors that would tend to show that defendant was a dominated corporation." *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S, Inc.*, 933 F.2d 131, 138-39 (2d Cir. 1991). Generally, the process of establishing alter ego liability is a broad-based inquiry into the totality of facts to determine if the domination prong is established. *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995).

Plaintiff asserts that Marnock and Marnock Retail operate from essentially the same location, share a phone number, and use email addresses with the same domain name. (Mem. at 10; *see also* Corporate Defs. PACA Licenses.) They also use the same banking institutions, have the same suppliers, registered agent, and are controlled by the same principal Defendant Kelly. (Compl. ¶¶ 41-45, 48-50.) Marnock and Marnock Retail are also secured by the same lenders, as shown on their

UCC-1 financing statements. (Kang Decl. ¶ 9; Ex. N to Kang Decl., Dkt. 15-5; Supp. Mem. at 5.) Additionally, although the addresses on Marnock's and Marnock Retail's PACA licenses list neighboring units (402 East 83rd Street and 412 East 83rd Street), these two locations share an awning and commercial entrance, such that when Plaintiff makes deliveries, the Corporate Defendants do not make clear which entity is receiving the goods. (Kang Decl. ¶ 4; *see also* Ex. L to Kang Decl., Dkt. 15-3.)

The information on the Invoices further demonstrates that Marnock and Marnock Retail are interconnected. The Invoices contain the name "Sampars Food Saver NY" which is similar to the business name for Marnock, Food Saver NY,[1] and the address of Marnock Retail, as listed on its PACA license, 412 E 83rd Street, Brooklyn, NY 11236.

Defendants have not appeared in this proceeding to contest any of these allegations. I find that Plaintiff has established that Marnock and Marnock Retail are alter egos of each other. *Cent. Produce Corp. v. 32-18 M&M Corp.*, No. 17-CV-3841 (LDH) (RLM), 2018 WL 4327923, at *6 (E.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4326925 (E.D.N.Y. Sept. 10, 2018) (finding corporate defendants were alter egos because they had the same owner and were secured by the same corporate entity).

### 3. **Kelly's Personal Liability**

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007). Courts must "examine whether the trustee 'in any way encumbered the funds or rendered them less freely available to PACA creditors.'" *Id.* (citing *D.M. Rothman & Co. v. Korea Commercial Bank of N.Y.*, 411 F.3d 90, 99 (2d Cir.2005)).

[1] Marnock's PACA license lists the business name as Foodsaver NY.

As the sole reported principal on the PACA licenses for both Corporate Defendants, Kelly is "in a position of control over the PACA trust assets." (Compl. ¶ 25; Mem. at 7-8.) Plaintiff alleges that "Kelly failed to direct the Corporate Defendants to fulfill their statutory duty to preserve PACA trust assets and pay Plaintiff for the produce it supplied." (Compl. ¶ 26.) Accepting these allegations as true for purposes of the Motion, *Finkel*, 577 F.3d at 84, I find that Kelly was in a position to control the assets of the PACA trust of the Corporate Defendants but failed to turn over the trust assets to Plaintiff when payment was due, which made the funds "less freely available" to Plaintiff. Therefore, he is personally liable under PACA.[2]

Accordingly, I respectfully recommend that all Defendants be held liable for violating PACA.

### ***B. Liability for Common Law Claims***

Plaintiff also brings common law causes of actions for failure to pay for goods sold and breach of contract against Corporate Defendants.

#### **1. <u>Failure to Pay for Goods Sold</u>**

Under New York State law, to establish a claim for failure to pay for goods sold, a plaintiff must show "the purchase, sale and delivery of goods at an established price and nonpayment therefor." *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02 CIV. 9629 (NRB), 2004 WL 830079, at *2 (S.D.N.Y. Apr. 13, 2004).

Plaintiff sold and delivered produce to Corporate Defendants at prices set forth in the Invoices, Corporate Defendants accepted the goods shipped by Plaintiff, thereby purchasing them, but failed to make full payment. (Kang Decl. ¶¶ 7-8; Compl. ¶¶ 32-33.)

Plaintiff has established a claim for failure to pay for goods sold, and I respectfully recommend that Corporate Defendants be held liable for this claim.

---

[2] Although Plaintiff also alleged unlawful dissipation of trust assets by a corporate official against Kelly in the Complaint, it is not asserted in the Motion; thus, it is deemed waived.

### 2. Breach of Contract

To establish a claim for breach of contract, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Under New York law, purchase orders and invoices can constitute a contract for the sale of goods. *Demand Elec., Inc. v. Innovative Tech. Holdings*, LLC, 665 F. Supp. 3d 498, 505 (S.D.N.Y. 2023).

Plaintiff issued Invoices to Corporate Defendants, using a version of Marnock's business name, Sampars Food Saver NY, and the address of Marnock Retail, 412 E 83rd Street, Brooklyn, NY 11236. Corporate Defendants accepted all of Plaintiff's shipments and received the Invoices. (Kang Decl. ¶ 8.) Because Marnock and Marnock Retail are alter egos, the Invoices constitute agreements between Plaintiffs and both Corporate Defendants to buy goods. *See Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962 (EK)(MMH), 2022 WL 4586185, at *10 (E.D.N.Y. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4586350 (E.D.N.Y. Sept. 29, 2022) (finding PACA invoices are contracts). The goods were shipped and delivered, establishing Plaintiff's performance of the contract, and Corporate Defendants breached the contract by failing to pay the balance in full after acceptance of the goods. (Compl. ¶ 9, Kang Decl. at ¶¶ 7-8.)

Accordingly, Plaintiff has established a claim for breach of contract, and I respectfully recommend that Corporate Defendants be held liable for this claim.

## III. Damages

Plaintiff seeks the unpaid amount of the Invoices, the related delivery fees and interest as damages.

### *A. Purchase Prices on Unpaid Invoices*

The twenty-one Invoices show a total amount due of $43,660.50. Partial payment of $2,467.62 was made on the May 27, 2025 Invoice. (*See* Revised Damages Chart.) Thus, Plaintiff establishes that Defendants owe $41,192.88 for the unpaid Invoices.

### *B. Delivery Fees*

Plaintiff submitted a damages chart indicating "Delivery Fee[s]" in the amounts of $521.20, $472.36, $611.60, $463.68, $663.44, $505.20, and $255.36, totaling $3,492.84. (Revised Damages Chart.)

Recovering under a PACA claim is not limited to the cost of the commodity but includes "sums owing in connection with such transactions." *See* 7 U.S.C. 499e(c)(2). Although these Delivery Fees are not stated on the Invoices, freight charges are a "necessary part of the produce transaction" and are included within the phrase "sums owing in connection with such transactions. *Lincoln Diversified, Inc. v. Mangos Plus, Inc.*, No. 98 CIV. 5593 (RWS), 2000 WL 890198, at *2 (S.D.N.Y. July 5, 2000). Therefore, I find that the Delivery Fees in the amount of $3,492.84 are owed to Plaintiff in connection with his PACA claim.

### *C. Interest*

Courts have the discretion to award interest on a PACA claim. *See Frankie Boy Produce Corp. v. Sun Pac. Enters.*, No. 99 CIV. 10158 (DLC), 2000 WL 1532914, at *3 (S.D.N.Y. Oct 17, 2000). Plaintiff seeks interest at the contractually agreed-upon rate of 18% per annum for unpaid invoice amounts that are past due. (Mem. at 11.) Although "PACA does not itself establish a right to interest," "the purchaser is required to pay [interest] when the parties' contract so provides[.]" *Dayoub Mktg., Inc. v. S.K. Produce Corp.*, No. 04 CIV. 3125 (WHP), 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005).

Each Invoice states that "interest on unpaid balance shall accrue at higher of 18% per year or maximum statutory rate." There is no statutory interest rate under PACA. *See* 7 U.S. Code § 499e. Courts in this Circuit have found that a contractually agreed-upon interest rate of 18% per annum is

reasonable. *Double Green Produce, Inc.*, 387 F. Supp. 3d at 272 (citing *S. Katzman Produce, Inc. v. JAT Beverage Inc.*, No. 17 CIV. 7930 (LTS), 2018 WL 6437058, at *5 (S.D.N.Y. Dec. 7, 2018)). Plaintiff measured the interest from the date each invoice became past due, which was ten days after delivery of the goods. (Supp. Mem. at 2; *see also* Revised Damages Chart.) *See* 7 U.S.C. § 499e(c)(3); 7 CFR § 46.2(aa)(1).

Plaintiff's calculations of interest due as of June 10, 2026 are accurate in large part. The tables below set forth the corrected calculations.[3]

| Invoice No. | Invoice Date | Amount Due on Invoice | Payment Due Date | Days Late to June 10, 2026 | Interest Per Year | Daily Interest | Interest Due as of June 10, 2026 (Days Late x Daily Interest) |
|---|---|---|---|---|---|---|---|
| 25-75 | 5/27/2025 | $ 1,204.38 | 6/6/2025 | 369 | $ 216.79 | $ 0.59 | $ 217.71 |
| 25-76 | 5/29/2025 | $ 1,069.00 | 6/8/2025 | 367 | $ 192.42 | $ 0.53 | $ 194.51 |
| 25-77 | 5/30/2025 | $ 1,774.00 | 6/9/2025 | 366 | $ 319.32 | $ 0.87 | $ 318.42 |
| 25-78 | 6/2/2025 | $ 3,312.00 | 6/12/2025 | 363 | $ 596.16 | $ 1.63 | $ 591.69 |
| 25-79 | 6/5/2025 | $ 1,392.50 | 6/15/2025 | 360 | $ 250.65 | $ 0.69 | $ 248.40 |
| 25-80 | 6/6/2025 | $ 1,200.00 | 6/16/2025 | 359 | $ 216.00 | $ 0.59 | $ 211.81 |
| 25-81 | 6/9/2025 | $ 2,003.00 | 6/19/2025 | 356 | $ 360.54 | $ 0.99 | $ 352.44 |
| 25-82 | 6/10/2025 | $ 1,854.00 | 6/20/2025 | 355 | $ 333.72 | $ 0.91 | $ 323.05 |
| 25-83 | 6/12/2025 | $ 2,062.00 | 6/22/2025 | 353 | $ 371.16 | $ 1.02 | $ 360.06 |
| 25-84 | 6/13/2025 | $ 1,726.00 | 6/23/2025 | 352 | $ 310.68 | $ 0.85 | $ 299.20 |
| 25-85 | 6/16/2025 | $ 1,619.00 | 6/26/2025 | 349 | $ 291.42 | $ 0.80 | $ 279.20 |
| 25-86 | 6/17/2025 | $ 1,525.00 | 6/27/2025 | 348 | $ 274.50 | $ 0.75 | $ 261.00 |
| 25-87 | 6/20/2025 | $ 2,652.00 | 6/30/2025 | 345 | $ 477.36 | $ 1.31 | $ 451.95 |
| 25-88 | 6/23/2025 | $ 2,181.00 | 7/3/2025 | 342 | $ 392.58 | $ 1.08 | $ 369.36 |
| 25-88 | 6/24/2025 | $ 1,908.00 | 7/4/2025 | 341 | $ 343.44 | $ 0.94 | $ 320.54 |
| 25-89 | 6/26/2025 | $ 1,135.00 | 7/6/2025 | 339 | $ 204.30 | $ 0.56 | $ 189.84 |
| 25-90 | 6/27/2025 | $ 3,069.00 | 7/7/2025 | 338 | $ 552.42 | $ 1.51 | $ 510.38 |
| 25-91 | 6/30/2025 | $ 2,021.00 | 7/10/2025 | 335 | $ 363.78 | $ 1.00 | $ 335.00 |
| 25-92 | 7/2/2025 | $ 3,231.00 | 7/12/2025 | 333 | $ 581.58 | $ 1.59 | $ 529.47 |
| 25-93 | 7/3/2025 | $ 1,063.00 | 7/13/2025 | 332 | $ 191.34 | $ 0.52 | $ 172.64 |
| 25-94 | 7/7/2025 | $ 3,192.00 | 7/17/2025 | 328 | $ 574.56 | $ 1.57 | $ 514.96 |
| | | | | | **Totals** | $ 20.30 | $ 7,051.63 |

[3] The Revised Damages Chart erroneously calculates interest on Invoice number 25-83, which is dated June 12, 2025, starting from June 22, 2024. Additionally, two separate Invoices, dated June 23, 2025 and June 24, 2025, have the same invoice number, 25-88.

| Delivery Fees | Invoice Date | Amount Due | Payment Due Date | Days Late to June 10, 2026 | Interest Per Year | Daily Interest | Interest Due as of June 10, 2026 (Days Late x Daily Interest) |
|---|---|---|---|---|---|---|---|
| Fee 1 | 5/30/2025 | $ 521.20 | 6/9/2025 | 366 | $ 78.18 | $ 0.26 | $ 95.16 |
| Fee 2 | 6/6/2025 | $ 472.36 | 6/16/2025 | 359 | $ 70.85 | $ 0.23 | $ 82.57 |
| Fee 3 | 6/13/2025 | $ 611.60 | 6/23/2025 | 352 | $ 91.74 | $ 0.30 | $ 105.60 |
| Fee 4 | 6/20/2025 | $ 463.68 | 6/30/2025 | 345 | $ 69.55 | $ 0.23 | $ 79.35 |
| Fee 5 | 6/27/2025 | $ 663.44 | 7/7/2025 | 338 | $ 99.52 | $ 0.33 | $ 111.54 |
| Fee 6 | 7/3/2025 | $ 505.20 | 7/13/2025 | 332 | $ 75.78 | $ 0.25 | $ 83.00 |
| Fee 7 | 7/7/2025 | $ 255.36 | 7/17/2025 | 328 | $ 38.30 | $ 0.13 | $ 42.64 |
| | | | | | **Totals** | $ 1.73 | $ 599.86 |

Accordingly, I respectfully recommend that Plaintiff be awarded $44,685.72 for the unpaid Invoices and Delivery Fees, and prejudgment interest in the amount of $7,651.49 to June 10, 2026, and daily interest of $22.03 from June 11, 2026 through the date judgment is entered.

***D. Attorneys' Fees***

A seller is entitled to attorneys' fees in an action to enforce a PACA trust "when the parties' contract so provides." *G & P Warehouse, Inc.*, 2016 WL 5802747, at *7 (quotation and citation omitted). "In the PACA context, courts have understood standard-form provisions contained in invoices to constitute additional terms of the purchase agreement between the parties…." *Tomato Mgmt., Corp. v. CM Produce LLC*, No. 14 CIV. 3522 (JPO), 2014 WL 2893368, at *2 (S.D.N.Y. June 26, 2014) (citation omitted). "The court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award." *Zuffa, LLC v. South Beach Saloon, Inc.*, No. 15-CV-6355 (ADS)(AKT), 2019 WL 1322620, at *6 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 1317568 (E.D.N.Y. Mar. 22, 2019). Requests for attorneys' fees must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983).

Each Invoice states that "[a]ll interest and attorneys' fees due seller shall be considered sums owing in connection with this transaction under the PACA trust." Plaintiff seeks $4,559.00 in attorneys' fees for work performed by Gregory Brown, Esq. (Brown Decl. ¶ 15.)

**1. <u>Reasonable Hourly Rate</u>**

A reasonable hourly rate is determined through the application of the forum rule. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). The forum rates in the Eastern District have recently been found to be $450 to $650 per hour for partners. *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

Plaintiff seeks attorneys' fees at a rate of $485.00 per hour. (Brown Decl. ¶ 16.) Mr. Brown stated that he has "concentrate[d] [his] practice on matters related to PACA and [has] been practicing since 2006." (*Id.*) Accordingly, I find that $485.00 is a reasonable hourly rate.

**2. <u>Reasonableness of Time Billed</u>**

"[T]o determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Litkofsky v. P & L Acquisitions, LLC*, No. CV-15-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016).

The time sheet for Mr. Brown indicates that he performed 9.4 hours of work from October 1, 2025, to November 20, 2025. (Ex. H to Brown Decl., Dkt. 14-8.)

I find that the hours billed by counsel are reasonable and respectfully recommend that Plaintiff be awarded $4,559.00 in attorney's fees.

## <u>CONCLUSION</u>

Based on the foregoing, I respectfully recommend that the Motion for Default Judgment be granted and that Plaintiff be awarded $44,685.72 for unpaid invoices and delivery fees in damages,

prejudgment interest in the amount of $7,651.49 plus daily interest of $22.03 from June 10, 2026 through the date judgment is entered, and $4,559.00 in attorneys' fees.

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service no later than September 14, 2026. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).